UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
PETER F. VALDEZ,                                       :
                              Plaintiff,               :
                                                       :         **<u>OPINION AND ORDER</u>**
v.                                                     :
                                                       :         23 CV 7279 (VB)
WELLS FARGO ADVISORS, LLC,                             :
                              Defendant.               :
--------------------------------------------------------------x

<u>Briccetti, J.</u>:

        Plaintiff Peter F. Valdez brings this employment discrimination action against defendant

Wells Fargo Advisors, LLC ("Wells Fargo"), claiming it discriminated against him based on his

age, race, and ethnicity.  Plaintiff brings claims of (i) discrimination pursuant to Title VII of the

Civil Rights Act of 1964, 42 U.S.C. § 2000 <u>et. seq.</u> ("Title VII"), the Age Discrimination in

Employment Act of 1967, 29 U.S.C. §§ 621 to 634 ("ADEA"), Section 1981 of the Civil Rights

Act of 1866, 42 U.S.C. § 1981 ("Section 1981"), and the New York State Human Rights Law,

N.Y. Exec. Law § 296 ("NYSHRL"); (ii) retaliation pursuant to Title VII, the ADEA, and the

NYSHRL; and (iii) a hostile work environment pursuant to Title VII.[1]

---

[1]     In his complaint, plaintiff states that he brings claims under the ADEA (Docs. ##1 ¶1, 58
at 6), but none of the causes of actions actually pleaded in the complaint arise under the ADEA.
(Doc. #1 ("Compl.") ¶¶ 64–111).  Despite plaintiff's pleading error, in the interest of justice, the
Court will analyze the discrimination and retaliation claims under the ADEA, as well as the
statutes raised in the complaint.

        Further,  plaintiff does not plead retaliation claims under Section 1981 in his complaint.
(Compl. ¶¶ 88–92).  To the extent plaintiff intended to plead those claims under Section 1981,
the analysis is not impacted.  <u>Carr v. N.Y.C. Transit Auth.</u>, 76 F.4th at 178 (noting that retaliation
claims under Title VII, the ADEA, and Section 1981 are subject to the <u>McDonnell Douglas</u>
analysis).

        In his opposition, plaintiff argues that defendant has not moved to dismiss plaintiff's
ADEA or state law claims and thus they should move forward.  (Doc. #58 at 20).  The Court
finds defendant has sufficiently moved for summary judgment on all claims under the NYSHRL.
<u>See</u> (Doc. #51) at 4–16 (discrimination), (Doc #51 at 16–26) (retaliation).  Defendant also clearly

Now pending is defendant's motion for summary judgment.  (Doc. #50).  For the reasons set forth below, the motion is GRANTED.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

## BACKGROUND

The parties have submitted briefs, statements of material facts pursuant to Local Civil Rule 56.1, and declarations with exhibits.[2]  These submissions reflect the following factual background.

I.   <u>Plaintiff's Employment at Wells Fargo</u>

Plaintiff is a Hispanic man of Mexican descent.  At the time of commencement of this action, he was 64 years old.  Plaintiff has been employed by Wells Fargo or its predecessor, Wachovia Bank, as a financial advisor since approximately May 30, 2009.  Plaintiff remains employed as a Wells Fargo financial advisor.  As a financial advisor, plaintiff receives a salary, as well as commissions for trades he assists with executing for clients.  Financial advisors may receive referrals from bankers within their own branch or other branches.  Wells Fargo has a policy that financial advisors may be affiliated with up to two branches.  At the time of the events at issue, plaintiff was working at the Wells Fargo branch in Hopewell Junction, New York.  While plaintiff was at the Hopewell Junction branch there were two bankers, Ricardo Ventura

---

stated it was moving to dismiss the entirety of the complaint, which includes any claims brought under the ADEA.  (Doc. #51 at 3).

[2]     Plaintiff has failed to comply with Local Rule 56.1(d), which requires each statement in his response to defendant's statement of material facts and in his counterstatement to "be followed by citation to evidence."  Despite plaintiff's noncompliance, the Court has independently reviewed the record, and will consider only plaintiff's assertions of fact substantiated by record evidence.  Unsubstantiated assertions of fact will not be considered. <u>Vista Food Exch., Inc. v. Comercial De Alimentos Sanchez S de R L de C.V.</u>, 627 F. Supp. 3d 408, 417 n.1 (S.D.N.Y. 2022).

and Janet Radier, who sent plaintiff referrals.  In 2020 and 2021, plaintiff asserts he experienced medical issues including a heart attack, depression, anxiety, and seizures.

Plaintiff claims he was discriminated against by Brittany Gatto, then-Branch Manager at the Hopewell Junction branch; Adam Dumoch, then-Regional Bank District Manager; Mike Freiheit, Private Wealth Area Manager; his manager Suzanne Lichtman, Area Manager; and Chris Calabrese, then-Market Manager.  Plaintiff repeatedly testified that he never heard a comment about his race, national origin, ethnicity or age, made by any Wells Fargo employee.

II.    Plaintiff Complains About Not Receiving Referrals

On or about December 4, 2019, plaintiff first complained that Gatto and Dumoch were steering referrals away from him to Mark Fidelio, a younger, white financial advisor located in another Wells Fargo branch.  Wells Fargo initiated an investigation into the complaint led by Senior Employment Investigator Marisa Griggs.  Griggs interviewed plaintiff on March 11, 2020.  Plaintiff could only identify a feeling of discrimination and could not provide any facts or other support for his claims of alleged discrimination.  Plaintiff claimed Ventura told him bankers were told not to refer customers to him.  Plaintiff later testified it was Gatto who said this.

Gatto was also interviewed as part of the investigation.  She stated, "[w]hen I became the [branch manager] in Hopewell and walked into a sh*t storm.  The previous [branch manager] and Pete had a strained relationship.  TMs were really unhappy with Peter due to a lot of issues.  The prior [branch manager] gave me a run down and we have permission to not send him referrals.  We just say that new clients were existing clients.  They were lying to him."  (Doc. #60-2).

Griggs closed the case as unsubstantiated but told plaintiff that if any further issues arose he should report them.  Plaintiff did not report any further issues.

3

III.    Plaintiff Misses Meetings with Gatto and Ventura

On December 17, 2019, plaintiff emailed Gatto to set up a meeting regarding the referral process.  The meeting was scheduled for January 9, 2020.  Plaintiff did not show up to the meeting.  When Gatto inquired whether he was going to attend, plaintiff responded, "I declined the meeting yesterday.  The referral process has not changed since you have been with Wells Fargo Bank N.A."  (Doc. #54 ("Tandy Decl.") Ex. 9 at ECF 2)[3].  Plaintiff testified he did not attend the meeting because it would not have helped and Gatto would have kept sending referrals to Fidelio.

On January 27, 2020, plaintiff emailed Ventura requesting a meeting regarding their partnership.  On February 1, 2020, Ventura emailed Gatto stating that plaintiff did not come to the branch on the day they agreed to schedule a time to speak.  Plaintiff testified he was repeatedly advised Ventura did not send him referrals because of their strained relationship.

IV.    Plaintiff Receives an Informal Warning

On or about April 16, 2020, plaintiff received an "informal warning for inappropriate workplace conduct" from his manager Lichtman.  The informal warning stated:

> Peter is visiting branches that are not assigned to him and disrupts other team members by verbally expressing to other team members his dissatisfaction with his assigned branch.  Peter fails to follow managements directive regarding maintaining a consistent schedule with his assigned branch which impacts other branch team members ability to partner with you.  Clients have provided feedback to management that their interactions with you are uncomfortable which created a poor experience for the client.  Peter fails to follow managements directive regarding consist participation in required branch partnership activities.  Peter demonstrates unprofessional behavior as he consistently fails to keep himself available for clients and partners who are attempting to make contact with him.  Peter communicates in an unprofessional and inappropriate  manner with other team members and management verbally and in writing and the impact was creating an unprofessional workplace environment.

---

[3]    "ECF ___" refers to page numbers automatically assigned by the Court's Electronic Case Filing system.

(Tandy Decl. Ex. 11).

On April 20, 2020, plaintiff contacted Wells Fargo's employee relations department to complain that the informal warning was related to his disability.  On April 22, 2020, an employee relations consultant contacted plaintiff to discuss the informal warning.  Plaintiff did not raise any concerns of age or race discrimination during that interaction.

Afterwards, plaintiff had a call with Lichtman to discuss moving forward after the informal warning.  On May 7, 2020, plaintiff emailed the employee relations consultant stating, "We had an excellent follow-up call.  [Lichtman] took the time to provide guidance and coaching.  I was very appreciative of her time."  (Tandy Decl. Ex. 12 at ECF 4).

V.    Plaintiff's Continued Strained Relationship with Coworkers

On May 4, 2020, plaintiff sent an email to Gatto, Lichtman, Dumoch, and Ventura stating, "We need your help.  I just got off the phone with [Ventura], would greatly appreciate your guidance on phone transfer referrals."  (Tandy Decl. Ex. 13 at ECF 3).  Ventura responded to the email, after removing plaintiff from the email chain, to explain that he and plaintiff had a conference call to discuss their partnership and plaintiff became upset about the referral process. (Tandy Decl. Ex. 14 at ECF 2).  In the same email, Ventura wrote, "I find Mr. Valdez actions to be very unprofessional and destructive to the ability to build strong FA/Premier Banker partnership.  Mr. Valdez has a habit of humiliating my professionalism and my knowledge. Whenever I ask him a question he turns it around and ask me the same question and then sends mass email to all management to discredit me.  This is very offensive to my work ethics and to what I am working hard to build with the Hopewell Team."  (Id.).  Plaintiff disputes this characterization and maintains he has always had a good personal and professional relationship with Ventura.  (Doc. # 51 ("Valdez Decl.") ¶ 11).

On August 12, 2020, Ventura emailed Gatto stating that working with plaintiff was the most stressful part of his job because of plaintiff's disrespect to him as a person and as a banker. (Doc. #55 at ECF 34–35).  Ventura said he believed plaintiff disrespected him and ruined client relationships.  (Id.).

On August 27, 2020, Gatto emailed Lichtman to report an unpleasant interaction she witnessed between plaintiff and a client.  Gatto reported plaintiff did not ask the client any questions and made mistakes about the client's investment portfolio.  After this interaction, Gatto reported not wanting to introduce customers to plaintiff.  (Doc. #55 at ECF 37).

On October 21, 2020, plaintiff emailed Fidelio with Lichtman copied stating, "I am asking you again to please respect, the 'Wells Fargo Professional Courtesy Guidelines and Rules of Engagement.'  It has been my understanding that you have and are currently still receiving new affluent investment referrals from bankers Ricardo Ventura and Janet Radier since 2019.  This is violation of the attached P[rofessional] C[ourtesy] policy."  (Tandy Decl. Ex. 17).  During his deposition, plaintiff conceded that the professional courtesy policy does not state that Ventura and Radier could not send Fidelio referrals.

On October 27, 2020, plaintiff had a call with Lichtman and Calabrese, in which Lichtman questioned plaintiff about plaintiff calling a district manager outside of his district to discuss his concerns about referrals being driven to Fidelio.[4]  Plaintiff agreed to raise concerns to Lichtman rather than escalating issues outside of the district.  Plaintiff asked Lichtman to set up a follow-up call with Fidelio and plaintiff to discuss their relationship.  On the October 27 call, plaintiff recognized his good relationship with Lichtman and Calabrese and said he had "no

---

[4]    This call, and many of the other calls referenced herein, were secretly recorded by plaintiff.

complaints" about them.  (Tandy Decl. Ex. 18 at Tr. 9).  He further told Lichtman she was the best manager he had the entire time he worked at Wells Fargo.  Plaintiff testified that at the time of the October 27 call, he did not believe Lichtman or Calabrese were discriminating against him.

On November 2, 2020, plaintiff, Lichtman, and former Senior Lead Business Execution Consultant, Julie Warren, had a call regarding plaintiff not receiving referrals.  Plaintiff said it was "going to be difficult, if not impossible, to move forward with [the Hopewell] branch." (Tandy Decl. Ex. 19 at Tr. 2).  In response, Lichtman asked if plaintiff had considered possibly moving to another branch, to which plaintiff appeared amenable.  When Warren inquired why plaintiff felt he was not receiving referrals in his current location, plaintiff responded that a decision was made not to send him referrals and that Ventura "said he was told to lie and not send me referrals."  (Id. at Tr. 4).  Warren told plaintiff that Ventura was sending referrals to Fidelio because of the "challenged relationship" between plaintiff and Ventura.  (Id. at Tr. 9).  At the conclusion of the call, when asked how best to move forward, plaintiff suggested a move to the Fishkill and Carmel branches.

On December 1, 2020, Lichtman and plaintiff had a call to discuss a complaint raised by Ventura.  Ventura had attempted to set up a call with plaintiff and a client he had referred to plaintiff.  But plaintiff did not respond to Ventura's calendar invite for more than 24 hours. Following that call, plaintiff called employee relations.  He alleged Lichtman yelled at him and used a demeaning tone.  During his deposition, plaintiff admitted Lichtman did not yell at him and was not demeaning.

VI.    Plaintiff Raises Complaints to Leah Moen

On December 4, 2020, plaintiff had a call with employee relations consultant Leah Moen to discuss the lack of referrals.  He once again alleged that Radier and Ventura made an agreement to send all referrals to Fidelio rather than plaintiff and that management was aware of the agreement.  Plaintiff suggested that one of the reasons he was having problems with Lichtman was because she did not understand his seizure disorder and mental health issues.  Plaintiff said he wanted to ensure Lichtman understood and learned about his disability, and he wanted to pursue a professional courtesy complaint against Fidelio.

Plaintiff and Moen had a follow-up call on January 27, 2021.  Moen confirmed referrals were not going to plaintiff because of his strained relationships with Ventura and Radier.  Moen further stated Ventura and Radier had been allowed to refer people elsewhere because they did not want to work with plaintiff.  However, Moen also explained that per an agreement made in October or November 2020, which included Lichtman, Dumoch, and Gatto, all referrals were supposed to go to plaintiff.  She affirmed that moving forward the bankers in the Hopewell Junction branch would be held accountable if any referrals were not sent to plaintiff.

On March 4, 2021, plaintiff had a call with Lichtman and Calabrese after Ventura informed them plaintiff had cancelled a meeting with a client Ventura referred to him.  The previous week, Lichtman warned plaintiff not to make appointments for his clients to get the COVID vaccine.  Ventura told Lichtman and Calabrese that plaintiff believed he was not permitted to take the client meeting based on Lichtman's warning.  On the March 4 call, Lichtman clarified the warning only referred to making COVID vaccine appointments, not to other meetings with clients.  Plaintiff asserted he would convey to Ventura there was a misunderstanding on his part and would reschedule the client.  The next day, March 5, Lichtman

8

and plaintiff had a follow-up call to ensure plaintiff was able to reconnect with the client and reset the appointment. Plaintiff apologized for the misunderstanding and considered the matter resolved.

VII.    Plaintiff Receives a Formal Warning

On March 18, 2021, plaintiff received a "formal warning for inappropriate workplace conduct" because he "engaged in unprofessional conduct during a conference call when your manager was attempting to provide you with coaching/feedback." (Tandy Decl. Ex. 28). Plaintiff admitted he raised his voice and parroted Lichtman's language back to her.

On March 29, 2021, plaintiff complained to employee relations stating, "[t]his formal complaint I believe qualifies on New York State COVID-19 regulations prohibiting an employer who is [threatening] me with termination related to COVID-19." (Tandy Decl. Ex. 29) This complaint was also closed as unsubstantiated. Later, during his deposition, plaintiff instead testified he believed the March 18 formal warning was retaliation for his January 2021 complaints to Moen regarding Ventura and Radier failing to refer him clients.

On April 12, 2021, plaintiff reached out to Lichtman to inquire about a $10 million deal attributed to the Hopewell Junction branch, which had not been referred to him. Lichtman had previously informed plaintiff the deal was for a customer who had a longstanding relationship with the branch and wanted to deal directly with the private bank, rather than a financial advisor. Plaintiff, without citing to anything in the record, disputes this and asserts the customer was a new customer who did not have a relationship with the private bank. However, plaintiff admitted that if the money did go to the bank, it did not go to Fidelio or any other financial advisor.

On April 15, 2021, on a call with Gatto, Ventura, and three other private bankers, plaintiff repeatedly interrupted and made condescending remarks to private banker Pamela Finewood. He

9

also repeatedly questioned why she was on the call and if she thought she could do a better job than him.  Plaintiff claimed he was disoriented on this call as a result of medication he was taking for his epilepsy.  When Lichtman and Calabrese followed up with plaintiff to discuss his behavior, plaintiff shifted the topic to customer referrals.  Calabrese told plaintiff his behavior could not be condoned regardless of these circumstances.

VIII.    Plaintiff's Transfer to Fishkill

On May 4, 2021, on a call with Calabrese and Lichtman, plaintiff was informed he was being transferred to the Fishkill branch because of his continued performance issues including missing follow-ups, being unprepared for meetings and for demonstrating unprofessional behavior.  Plaintiff had requested a transfer to Fishkill as recently as a month earlier.

IX.    Plaintiff's Performance Reviews

Plaintiff received a rating of "inconsistently meets expectations" on his 2021 year-end performance evaluation "due to continued conduct issues."  (Tandy Decl. Ex. 39).

Plaintiff received a rating of "meets expectations" on his 2022 mid-year review, his 2022 year-end review and his 2023 mid-year review.  (Tandy Decl. Ex. 40).  Although plaintiff's performance improved, he argues he remains in the lower quartile for investment revenue, which is below that of his peers affiliated with more than one branch.  He testified his reviews changed overnight and he has done exceptionally well at the bank since leaving the Hopewell Junction branch.  Lichtman remained plaintiff's manager through at least May 1, 2025.

X.    Additional Allegations

In a declaration without any evidentiary support plaintiff makes several additional allegations.  First, plaintiff alleges that Lichtman directed one of the bankers plaintiff works with at the Wappingers branch to stop sending him referrals and to instead direct clients to a newly

10

hired financial advisor named Keith Kohlmann.  Kohlmann is allegedly younger than plaintiff and Caucasian.  (Valdez Decl. ¶ 7).  Plaintiff also asserts there is a discrimination suit brought by Radier against Gatto and that another employee filed a complaint with human resources regarding alleged age discrimination by Gatto.  According to plaintiff, Gatto is no longer employed by Wells Fargo.  (Id. ¶ 9).

## DISCUSSION

I.      Standard of Review

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). [5]

A fact is material when it "might affect the outcome of the suit under the governing law . . . .  Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248.  The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried."  Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir. 2010).  It is the moving party's burden to establish the absence of any genuine issue of material fact.  Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

---

[5]      Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

11

If the non-moving party fails to make a sufficient showing on an essential element of its case on which it has the burden of proof, then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. at 323. If the non-moving party submits "merely colorable" evidence, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249–50. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts and may not rely on conclusory allegations or unsubstantiated speculation." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011). "[T]he mere existence of a scintilla of evidence" supporting the non-moving party's position is likewise insufficient; there must be evidence on which the jury could reasonably find for him. Dawson v. Cnty. of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party. Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003). If there is any evidence from which a reasonable inference could be drawn in the non-movant's favor on the issue on which summary judgment is sought, summary judgment is improper. Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77,82–83 (2d Cir. 2004). Bald assertions, completely unsupported by admissible evidence, are not sufficient to overcome summary judgment. Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991).

## II.    Discrimination Claims

Defendant argues it is entitled to summary judgment on plaintiff's discrimination claims under Title VII, the ADEA, Section 1981, and the NYSHRL because plaintiff fails to establish a prima facie case and plaintiff has not identified any evidence from which a reasonable jury could conclude defendant's non-discriminatory reasons for the alleged adverse actions were pretextual.

A.    <u>Legal Standard</u>

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).

Section 1981 "outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment."  <u>Patterson v. Cnty. of Oneida</u>, 375 F.3d 206, 224 (2d Cir. 2004); 42 U.S.C. § 1981(a).

The ADEA prohibits an employer from "discharg[ing] any individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  This protection extends to employees who are at least forty years old.  <u>Id</u>. § 631(a).

The NYSHRL similarly prohibits discrimination against an employee based on that employee's "age, race, creed, color, national origin, sexual orientation, gender identity or expression, military status, sex, disability, predisposing genetic characteristics, familial status, marital status, or status as a victim of domestic violence."  N.Y. Exec. Law § 296(1).

When, as here, a plaintiff's Title VII, ADEA, Section 1981, or NYSHRL discrimination claims are based on circumstantial evidence of discriminatory intent, the claims are analyzed under the familiar burden-shifting framework set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).  <u>See</u> <u>Alvarado v. United Hospice, Inc.</u>, 631 F. Supp. 3d 89, 111 (S.D.N.Y. 2022) (collecting cases under Title VII, Section 1981, and NYSHRL); <u>Rinaldi v. Mills</u>, 2022 WL 17480081, at *1 (2d Cir. Dec. 7, 2022) (standard for ADEA and NYSHRL).

13

Under the McDonnell Douglas framework, a plaintiff must first establish a prima facie case of discrimination by showing "(i) membership in a protected class; (ii) qualifications for the position; (iii) an adverse employment action; and (iv) circumstances surrounding that action giving rise to an inference of discrimination." Collins v. N.Y.C. Transit Auth., 305 F.3d 113, 118 (2d Cir. 2002).  Plaintiff's "burden of establishing a prima facie case is not onerous and has been frequently described as minimal." Norton v. Sam's Club, 145 F.3d 114, 118 (2d Cir. 1998).

Once a plaintiff presents a prima facie case, the defendant bears the burden of articulating a legitimate, non-discriminatory reason for the employment action. Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000).  If a defendant meets this burden, the plaintiff must point to evidence sufficient to permit a rational factfinder to conclude the employer's explanation is merely a pretext for actual discrimination. Id.

To satisfy the burden of showing pretext on summary judgment, a plaintiff "need only show that the employer's stated reason—even if true or factually accurate—was not the real reason, in the sense that it was not the entire reason due to a coexisting impermissible consideration." Bart v. Golub Corp., 96 F.4th 566, 575 (2d Cir. 2024).  Plaintiff must "produce admissible evidence showing circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." Id. at 576.  A plaintiff may show pretext "by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nondiscriminatory reason for its action." Ramos v. Marriott Intern., Inc., 134 F. Supp. 2d 328, 343 (S.D.N.Y. 2001).

The Second Circuit has "repeatedly expressed the need for caution about granting summary judgment to an employer in a discrimination case where, as here, the merits turn on a

14

dispute as to the employer's intent." Holcomb v. Iona College, 521 F.3d at 130, 137 (2d Cir. 2008). Because of the "elusive nature of intentional discrimination, plaintiffs must often rely on bits and pieces of information to support an inference of discrimination." Banks v. General Motors, LLC, 81 F.4th 242, 259 (2d Cir. 2023). "The resulting mosaic of intentional discrimination" may be sufficient to show discrimination." Id. "Even in the discrimination context, however, a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment." Holcomb v. Iona College, 521 F.3d at 137.

B.    Analysis

As plaintiff does not present direct evidence of discrimination or contend defendant's actions were discriminatory on their face, the Court will analyze plaintiff's discrimination claims under the McDonnell Douglas framework. For the reasons detailed below, plaintiff's claim fails at the third step of the McDonnell Douglas analysis as plaintiff has failed to identify any admissible evidence of pretext.

1.    Prima Facie Case

Defendant does not dispute that plaintiff, a 64-year-old Hispanic man of Mexican descent, is a member of a protected class. However, defendant argues plaintiff fails to establish the remaining three elements required to establish a prima facie case.

a.    Satisfactory Performance of Duties

Defendant argues plaintiff was not performing his duties satisfactorily.

The Court disagrees.

Plaintiff does not need to prove he was performing his duties satisfactorily, but rather that he was qualified for his position. Singh v. Knuckles, Komosinski & Manfro, LLP, 2020 WL 6712383, at *9 n.13 (S.D.N.Y. Nov. 16, 2020). To demonstrate he was qualified for his position,

plaintiff only needs to show that he possessed "the basic skills necessary for performance of the job."  Owens v. N.Y.C. Hous. Auth., 934 F.2d 405, 409 (2d Cir. 1991).  This showing has been described as "minimal."  Id.  He need not show that his job performance was "flawless or superior."  De la Cruz v. N.Y.C. Hum. Res. Admin. Dep't of Soc. Servs., 82 F.3d 16, 20 (2d Cir. 1996).  "[A]ll that is required is that the plaintiff establish basic eligibility for the position at issue, and not the greater showing that he satisfies the employer."  Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 92 (2d Cir. 2001).

Regardless of plaintiff's 2021 formal warning for unprofessional conduct or his poor 2021 year-end performance review, plaintiff remains employed at Wells Fargo as a financial advisor and has recieved satisfactory performance evaluations for all other years he was employed.  The isolated instances which defendant relies on do not suggest plaintiff does not meet the minimal showing required.  See  McEachron-howell v. N.Y. Presbyterian Hosp., 2025 U.S. Dist. LEXIS 164816, at *32 (S.D.N.Y. Aug. 22, 2025) (finding that a limited number of performance issues over a long period of time does not suggest that plaintiff lacked the qualifications or skills to do their job).

Accordingly, plaintiff has met his burden to show he was qualified for his position.

　　　　　　　　　b.　　　　Adverse Action

Defendant argues plaintiff did not suffer an adverse action required to show a prima facie case of discrimination.

The Court disagrees.

An adverse employment action is "a materially adverse change in the terms and conditions of employment."  Sanders v. N.Y. C. Human Res. Admin., 361 F.3d 749, 755 (2d Cir. 2004).  Examples of such a change include termination of employment, a demotion evidenced by

a decrease in wages or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation."  Id.

Plaintiff argues he experienced at least two adverse actions:  (i) reduced coverage and withheld referrals, and (ii) the informal and formal warnings he received in 2021.[6]

With respect to withheld referrals, plaintiff argues they caused him to suffer a monetary loss in the form of lost financial commissions.  A change in wages or salary is sufficient to be a materially adverse change in the terms and conditions of employment.  Sanders v. N.Y. C. Human Res. Admin., 361 F.3d at 755.  Accordingly, plaintiff has met his burden to show an adverse action in the form of withheld referrals.

By contrast, the 2021 warnings were not adverse actions.  A written warning "is not an adverse employment action unless it creates a materially adverse change in the plaintiff's working conditions."  Smith v. City of New York, 385 F. Supp. 3d 323, 335 (S.D.N.Y. 2019).  Similarly, negative performance evaluations only constitute adverse actions if they are accompanied by negative consequences or other tangible loss.  Id. at 334.  Here, plaintiff argues the warnings and performance evaluation were used as grounds to justify not sending plaintiff referrals.  Even so, the warnings did not cause a change in plaintiff's salary or his position, nor did they lead to any other tangible negative consequence.  Absent evidence that the warnings or performance evaluations "left [him] worse off[,]" plaintiff cannot prove they constituted an adverse action.  Muldrow v. City of St. Louis, 601 U.S. 346, 359 (2024).

---

[6]     Both parties discuss plaintiff's transfer to Fishkill in their briefings in the context of adverse action for the purposes of plaintiff's discrimination claim.  However, plaintiff does not affirmatively argue anywhere in his briefing that the transfer was an adverse action.  As such, the Court does not need to consider whether the transfer to Fishkill was an adverse action for the purposes of his discrimination claim.

In any event, the withheld referrals constitute an adverse action sufficient to satisfy plaintiff's burden as to this element of his prima facie case.

          c.          Inference of Discriminatory Intent

Defendant argues none of the complained of actions gives rise to an inference of discriminatory intent.  However, plaintiff alleges referrals were steered away from him to a younger, Caucasian financial advisor.  A reasonable jury could infer that such a diversion was driven by a discriminatory intent.  Plaintiff's burden at the prima facie stage is minimal.  Norton v. Sam's Club, 145 F.3d at 118.  As such, at this stage, he does not need to adduce concrete evidence to show defendant's action was motivated by discriminatory intent; rather an inference of discriminatory intent is sufficient.

In short, plaintiff has met his minimal burden of establishing a prima facie case.

          2.          Non-Discriminatory Reasons

At the second step of the McDonnell Douglas analysis, a defendant must proffer a legitimate, non-discriminatory reason for the adverse action.  Here, defendant argues customer referrals were steered away from plaintiff because of his inappropriate behavior and unprofessional conduct in the workplace.  This satisfies defendant's burden at this stage.  See Russell v. Westchester Cmty. Coll., 2025 WL 1165846, at *2 (2d Cir. Apr. 22, 2025) ("Inappropriate behavior is indisputably a legitimate non-discriminatory reason."); see also Edwards v. City of New York, 2005 WL 3466009, at *15 (S.D.N.Y. Dec. 19, 2005) (same as to insubordinate and unprofessional conduct).

          3.          Pretext

At the third and final step of the McDonnell Douglas analysis, a plaintiff must present "sufficient admissible evidence from which a rational finder of fact could infer that more likely

18

than not he was the victim of intentional discrimination." Bickerstaff v. Vassar Coll., 196 F.3d 435, 447 (2d Cir. 1999).  A plaintiff "is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the motivating factors."  Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 203 (2d Cir. 1995).  Thus, a plaintiff must "produce admissible evidence showing circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination."  Bart v. Golub Corp., 96 F.4th at 576.

Here, plaintiff offers only his own conclusory allegations.  Plaintiff's citation to Bart v. Golub Corp. does not excuse his failure to identify admissible evidence of pretext.  Plaintiff is correct that he may adduce evidence that even if the employer had mixed motives, the decision must have been motivated at least in part by plaintiff's protected status.  Bart v. Golub Corp., 96 F.4th at 574.  In that case, even though the plaintiff was fired for falsifying store logs and breaking store policy, she testified her employer made multiple comments that women were unfit to be managers, allowing the court to conclude discriminatory reasons in part motivated her termination.  96 F.4th at 567.  Here, however, plaintiff is unable to point to any evidence that referrals were steered away from him in any part due to his age, race, or ethnicity or for any reason other than his work performance.

Plaintiff relies on Gatto's comments that she and other employees had permission to steer referrals away from plaintiff and that plaintiff was being lied to.  ((Doc. #60 ("Gambino Decl.") Ex. B).  However, Gatto's statements demonstrate only that plaintiff's colleagues disliked working with him—not that they discriminated against him.  The record is replete with evidence detailing plaintiff's colleagues' issues with how plaintiff treated them and how he treated clients.

(See, e.g., Doc. #52 ("SoF") ¶¶ 38, 40, 41, 57, 58, 59).  This consistent viewpoint among plaintiff's colleagues supports the legitimacy of defendant's proffered non-discriminatory reasons.  Goldzweig v. Consol. Edison Co. of N.Y., Inc., 2026 WL 21005, at *2 (2d. Cir. Jan. 5, 2026) (summary order).

Moreover, plaintiff repeatedly testified he never heard any discriminatory remarks made to him by any Wells Fargo employee, let alone any of the employees he accuses of discrimination.  (SoF ¶ 5).  And plaintiff acknowledged his own performance issues—that he made mistakes in his dealings with bankers and raised his voice at Lichtman—and stated there was no excuse for his behavioral incidents.  (SoF ¶¶ 49, 95–97, 123–24, 135).

At bottom, plaintiff has not identified any evidence that would be sufficient to permit a rational jury to infer that Wells Fargo's proffered explanation for the adverse employment actions—namely, plaintiff's unprofessional conduct and interpersonal issues with colleagues— was a pretext for age, race, or national origin discrimination.

Accordingly, summary judgment must be granted on plaintiff's discrimination claims.

III.    Retaliation Claims

Plaintiff contends he was retaliated against for raising various concerns to employee relations personnel.  Defendant argues plaintiff fails to point to any admissible evidence creating a triable issue of fact regarding his retaliation claims under Title VII, the ADEA, Section 1981 and the NYSHRL.  The Court agrees with defendant.

A.    Legal Standard

Plaintiff's retaliation claims under Title VII, the ADEA, Section 1981, and the NYSHRL are also governed by the McDonnell Douglas burden-shifting framework.  See Alvarado v. United Hospice, Inc., 631 F. Supp. 3d at 116 (collecting cases).  To make out a prima facie case

20

of retaliation under Title VII, the ADEA, Section 1981, and the NYSHRL, a plaintiff must show

he (i) "engaged in protected activity," (ii) "the defendant was aware of that activity," (iii) he "was

subjected to a retaliatory action" that was "materially adverse," and (iv) "there was a causal

connection between the protected activity and the materially adverse action." Carr v. N.Y.C.

Transit Auth., 76 F.4th 172, 180 (2d Cir. 2023); Said v. NYC Health & Hosp. Corp., 2024 WL

1769317, at *3 (E.D.N.Y. Apr. 24, 2024) (listing elements of a prima facie case under the

NYSHRL as "similar [in] form to Title VII").[7]

    A "protected activity" entails "action taken to protest or oppose statutorily prohibited

discrimination." Jarrell v. Hosp. for Special Care, 626 F. App'x 308, 311 (2d Cir. 2015)

(summary order). Therefore, complaints of unfair treatment or "generalized grievances about an

unpleasant or even harsh work environment, without more . . . fail to rise to the level of protected

activity." Green v. Mount Sinai Health Sys., Inc., 826 F. App'x 124, 125 (2d Cir. 2020)

(summary order).

    To establish a materially adverse employment action for purposes of a retaliation claim,

"a plaintiff must show that a reasonable employee would have found the challenged action

materially adverse, which in this context means it well might have dissuaded a reasonable

---

[7]    Although previously the same standard applied to Title VII and NYSHRL retaliation claims, in 2019, the NYSHRL was amended to relax the standard for retaliation claims. Everett v. N.Y.C Dep't of Educ., 2023 WL 5629295, at *14 (S.D.N.Y. Aug. 31, 2023). "While New York courts have not yet produced any substantive analysis of how this amendment changes standards of liability under the NYSHRL, courts in this District have interpreted the amendment as rendering the standard for claims closer to the [broader] standard of the" New York City Human Rights Law ("NYCHRL"). Kaye v. N.Y.C. Health & Hosps. Corp., 2023 WL 2745556, at *17 (S.D.N.Y. Mar. 31, 2023). The Court "need not resolve the impact of these amendments here" because plaintiff's "claims fall short even under the NYCHRL's more liberal standards." Cooper v. Franklin Templeton Invs., 2023 WL 3882977, at *3 (2d Cir. June 8, 2023) (summary order).

worker from making or supporting a charge of discrimination."  Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006).

For purposes of a retaliation claim, causation can be established: "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus against the plaintiff by the defendant."  Gordon v. N.Y.C. Bd. of Educ., 232 F.3d 111, 117 (2d. Cir 2000).  Moreover, the plaintiff must present "proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 360 (2013).  Thus, retaliation claims require evidence that the desire to retaliate was the "but-for cause" of the materially adverse action.  See Gordon-Mallet v. Mt. Sinai Hosps. Grp., Inc., 2024 WL 1513910, at *18 (S.D.N.Y. Apr. 8, 2024) (applying but-for causation standard to retaliation claims under Title VII, the ADEA, Section 1981, and the NYSHRL). "The plaintiff need not prove "that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 90–91 (2d Cir. 2015)).  Temporal proximity between the adverse action and the protected activity may, on its own, be sufficient to establish a prima facie element of causation.  Parron v. Herbert, 768 F. App'x 75, 77 (2d Cir. 2019) (summary order).

"Once a prima facie case of retaliation is established, the burden of production shifts to the employer to demonstrate that a legitimate, nondiscriminatory reason existed for its action." Summa v. Hofstra Univ., 708 F.3d at 125.  "If the employer demonstrates a legitimate, non-discriminatory reason, then the burden shifts back to the plaintiff to establish, through either

direct or circumstantial evidence, that the employer's action was, in fact, motivated by discriminatory retaliation." Id.  While timing might be enough to establish a prima facie case, "temporal proximity alone is not enough to establish pretext in this Circuit." Abrams v. Dep't of Pub. Safety, 764 F.3d 244, 254 (2d Cir. 2014).  "Indeed, a plaintiff must come forward with some evidence of pretext in order to raise a triable issue of fact." Id.

B.     Analysis

Here, plaintiff predicates his retaliation claims on four allegedly adverse actions: (i) the steering away of customers, (ii) the 2021 formal warning, (iii) his 2021 performance evaluation, and (iv) the 2020 informal warning.[8]

1.     Prima Facie Case

It is not disputed plaintiff engaged in protected activity when he reported his concerns to human resources personnel.  It is also not disputed defendant was aware of that activity.

a.     Materially Adverse Action

For the purposes of this motion, defendant concedes the 2021 formal warning and plaintiff's 2021 performance evaluation constitute adverse employment actions.

However, the withholding of customer referrals does not constitute an adverse action for retaliation purposes because it preceded any discrimination complaints plaintiff lodged with employee relations.  It is axiomatic that an adverse employment action cannot serve as the basis

---

[8]     In his complaint, plaintiff alleges that the transfer to the Fishkill branch was a retaliatory action for engaging in protected activity.  (Compl. ¶ 69).  However, in his opposition to the motion for summary judgment, plaintiff states he does not maintain that his transfer was an adverse action or retaliatory.  (Doc. #56 at 17).  Thus, the Court will not consider whether the transfer to Fishkill was a retaliatory action.

Plaintiff also alleges that Lichtman is currently directing plaintiff's branch manager to send referrals to a younger Caucasian financial advisor.  Plaintiff makes these allegations without any evidentiary support or citation to the record.  Thus, the Court disregards these unsubstantiated allegations.

for a retaliation claim if the retaliatory action took place prior to the protected activity."  United States v. N.Y.C. Dep't of Educ., 407 F.Supp.3d 365, 404 (S.D.N.Y. 2018).  Plaintiff cannot ignore the sequence of events, which is fatal to his argument that customer referrals were an adverse action taken as retaliation for plaintiff's protected activity.

In the retaliation context, the 2020 informal warning plaintiff received could be considered an adverse action.  "The scope of actions that may be materially adverse for purposes of a Title VII retaliation claim is broader than those actions prohibited by Title VII's anti-discrimination provisions; the latter apply to the terms and conditions of employment, while the former anti-retaliation protection is broader and extends beyond workplace-related or employment-related retaliatory acts and harms."  Bowen-Hooks v. City of New York, 13 F. Supp. 3d 179, 224 (E.D.N.Y. 2014).  However, the Supreme Court has made clear that in the retaliation context, "it is important to separate significant from trivial harms."  Burlington N. & Santa Fe. Ry. Co. v. White, 548 U.S.  at 68.  Even though the informal warning did not constitute an adverse action for the purposes of the discrimination claim, a reasonable jury could find it "might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  Id.

        b.        Causation

Plaintiff argues the January 2021 phone call with Moen caused the March 2021 formal warning.  However, "an intervening event between the protected activity and the adverse employment action may defeat the inference of causation where temporal proximity might otherwise suffice to raise the inference."  Joseph v. Marco Polo Network, Inc., 2010 WL 4513298, at *18 (S.D.N.Y. Nov. 10, 2010).  "Evidence of significant misconduct by a plaintiff that fully justifies the adverse employment action and that occurs after the employee's protected activity extinguishes the probative force that might arise from the proximity in time between the

24

protected activity and the adverse employment action." Id.  In February 2021, plaintiff raised his voice and parroted Lichtman on a call.  Thus. there is undisputed evidence that significant misconduct occurred between the lodging of the complaint and the formal warning, which extinguishes the probative force of any temporal proximity between the two events.  Joseph v. Marco Polo Network, Inc., 2010 WL 4513298 at *18.

Similarly, the 2021 performance evaluation cannot sustain a retaliation claim because plaintiff does not identify a causal connection to any protected activity.  Plaintiff simply states that "[b]ut for plaintiff's age and national origin, he should have received referrals and permitted to cover at least two branches as he has consistently been evaluated as meeting standards." (Doc. #58 at 17).  This proffers a discrimination theory—not a retaliation theory—and in no way establishes a causal link between the performance review and any protected activity.  Plaintiff even admits his review could be attributed to his medical issues and COVID restrictions preventing financial advisors from meeting with clients (Valdez Decl. ¶¶ 8, 9)—a justification which again, is not tied to any protected activity.

Plaintiff meets his burden for showing causation through temporal proximity for the 2020 informal warning.  Plaintiff first complained of discrimination on December 10, 2019.  (Compl. ¶ 31).  The informal warning was issued approximately four months later on April 16, 2020.  (Compl. ¶ 42).  "The Second Circuit has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between a protected activity and an allegedly retaliatory activity, and courts have defined ten to twelve months as the outer limit."  Stancu v. New York City/Parks Dep't, 2022 WL 4581844, at *7 (S.D.N.Y. Sept. 29, 2022).  Here, a reasonable jury could infer causation from the temporal proximity of only four months.  Accordingly, plaintiff makes out a prima facie case of retaliation

25

for the informal warning.

### 2.    Non-Discriminatory Reason

Defendant meets its burden to demonstrate a legitimate non-retaliatory reason for the

2020 informal warning.  The informal warning states:

> Peter is visiting branches that are not assigned to him and disrupts other team members by verbally expressing to other team members his dissatisfaction with his assigned branch.  Peter fails to follow managements directive regarding maintaining a consistent schedule with his assigned branch which impacts other branch team members ability to partner with you.  Clients have provided feedback to management that their interactions with you are uncomfortable which created a poor experience for the client.  Peter to follow managements directive regarding consist participation in required branch partnership activities.  Peter demonstrates unprofessional behavior as he consistently fails to keep himself available for clients and partners who are attempting to make contact with him.  Peter communicates in an unprofessional and inappropriate  manner with other team members and management verbally and in writing
> and the impact was creating an unprofessional workplace environment.

(Tandy Decl. Ex. 11).  The explanation detailed in the warning is sufficient to meet defendant's

burden at this step in the analysis.

### 3.    Pretext

Nevertheless, the informal warning cannot sustain a retaliation claim because plaintiff

offers no admissible evidence that Wells Fargo's reason for the informal warning was a pretext

for retaliating against him for filing a discrimination complaint.  Plaintiff offers no document,

email, recording, or testimony that supports the conclusion that the informal warning was in <u>any</u>

<u>way</u> motivated by retaliatory animus.  In fact, in his deposition plaintiff conceded he needed to

improve the relationship between himself and his team members after the informal warning was

issued, undermining plaintiff's argument of pretext.  (SoF ¶ 49).  Summary judgment must be

granted here, as the record lacks "any evidence to support [the plaintiff's] allegations of pretext."

<u>Simon v. N.Y.C. Bd. of Educ.</u>, 2006 WL 1210959, at 9 (E.D.N.Y. May 2, 2006), <u>aff'd</u>, 240 F.

App'x 887 (2d Cir. 2007).

Accordingly, summary judgment must be granted on plaintiff's retaliation claim.

IV.    <u>Hostile Work Environment</u>

Defendant argues plaintiff's hostile work environment claim under Title VII fails because there is no evidence suggesting plaintiff was subjected to a hostile work environment based on his national origin.

The Court agrees.

"[T]o establish a hostile work environment claim under Title VII, a plaintiff must produce enough evidence to show that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." <u>Rivera v. Rochester Genesee Reg'l Transp. Auth.,</u> 743 F.3d 11, 20 (2d Cir. 2014).  Although not every instance of harassment will support a claim for a hostile work environment, "whether an environment is hostile or abusive can be determined only by looking at all the circumstances" including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." <u>Harris v. Forklift Sys., Inc.,</u> 510 U.S. 17, 23 (1993).  It is axiomatic however, that a plaintiff asserting a hostile work environment claim under Title VII must show sufficient evidence that the at-issue conduct occurred because of the plaintiff's protected characteristic. <u>Brown v. Henderson,</u> 257 F.3d 246, 252 (2d Cir. 2001).  An inference of discriminatory intent may be derived from a variety of circumstances including "invidious comments about others in the employee's protected group," or "the more favorable treatment of employees not in the protected group." <u>Chambers v. TRM Copy Ctrs. Corp.,</u> 43 F.3d 29, 37 (2d Cir. 1994).

Plaintiff does not cite any evidence in the record to support his claim that he was subject to a hostile work environment because of his national origin.  In fact, in his deposition plaintiff was unable to identify a single instance of anyone making a comment regarding his race, ethnicity, national origin, or age.  Instead, plaintiff says, without citing support, that he was critiqued after meeting with clients and that he is left in a state of "walking on eggshells."  (Doc. #58 at 19).  Having searched the record, the Court cannot identify any evidence from which a reasonable jury could conclude plaintiff worked in an environment that was hostile, physically threatening, humiliating, or pervasive based on his national origin.  Rivera v. Rochester Genesee Reg'l Transp. Auth., 743 F.3d at 20.[9]

Accordingly, summary judgment must be granted on plaintiff's hostile work environment claim.

## CONCLUSION

The motion for summary judgment is GRANTED.

The Clerk is instructed to terminate the motion (Doc. #50) and close this case.

Dated: March 25, 2026
       White Plains, NY

SO ORDERED:

Vincent L. Briccetti
United States District Judge

---

[9]   Defendant points to plaintiff's testimony that Lichtman was the best manager he ever had and to the fact plaintiff is still employed with Wells Fargo to undermine his hostile work environment claim.  Defendant does not cite any case law for the proposition that remaining employed by a company undermines a hostile work environment claim.  (Doc. #51 at 26–28).  Nor is the Court aware of any such cases.  Accordingly, the Court is not swayed by the fact that plaintiff remains employed or praised his manager.